**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| LEXINGTON INSURANCE COMPANY, | ) ) |
| Defendant. | ) |

Case No. 13-CV-165-JED-FHM

**OPINION AND ORDER**

**I.     Background**

This suit involves an insurance dispute relating to extensive fire damage to the old Barnard Elementary School building in Tulsa, Oklahoma. The Tulsa School of Arts and Sciences (TSAS) leased the building from Independent School District #1 of Tulsa County (School District). The Barnard building was covered by insurance policies provided by both the plaintiff, Philadelphia Indemnity Insurance Company (Philadelphia), and the defendant, Lexington Insurance Company (Lexington). Under the Philadelphia policy, TSAS was the Named Insured, and the School District was the designated Loss Payee. The Lexington policy identified the School District as the Named Insured. For purposes of this litigation, the parties do not dispute that the policies covered the type of property damage (fire) to the Barnard building.

Both the Philadelphia and Lexington policies provided identical "Other Insurance" provisions:

> If there is other insurance covering the same loss or damage ... we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

(Doc. 29-2 at 110, § G.2 [Philadelphia policy]; Doc. 29-4 at 9, § G.2 [Lexington policy]).  Both policies also contain provisions stating that:

> Covered Property does not include ... Property that is covered under another coverage form of this or any other policy in which it is more specifically descried, except for the excess of the amount due (whether you can collect on it or not) from that other insurance.

(Doc. 29-4 at 27, § 2.k [Lexington policy]; Doc. 29-3 at 3, § 2.i [Philadelphia policy]).

The parties move for summary judgment, each asserting that the Court should determine the insurance contract issues in its favor.  Philadelphia argues that, under established Oklahoma law, the "other insurance" provisions in both parties' insurance policies cancel each other out such that the insured loss should be shared by the companies on a pro-rata basis, according to the ratio each respective policy limit bears to the cumulative limit of all concurrent policies.  Lexington argues that the rule should not be applied because the Named Insured is different in the Philadelphia and Lexington policies and that the Philadelphia policy is therefore the primary coverage and the Lexington policy in excess coverage only.

**II.     Summary Judgment Standards**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The same standards generally apply where cross motions for summary judgment are filed, and summary judgment is appropriate where one of the parties is entitled to judgment as a matter of law on material facts that are not genuinely disputed.  Fed. R.

2

Civ. P. 56; *see Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 (10th Cir. 1981); *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997).

**III.   Discussion**

Both insurance policies at issue in this case contain "other insurance" clauses that are identical. It is well-settled under Oklahoma law that, where two insurers have provided insurance policies that cover the same loss and both policies have "other insurance" clauses, those clauses are to be disregarded. As the Oklahoma Supreme Court has explained:

> The conflict [between two insurers] is compounded when concurrent policies have "other insurance" clauses which cancel each other. They may each provide only excess coverage leaving no primary coverage, or both may have escape clauses disclaiming liability if other insurance is available to cover the loss. When concurrent policies have such "other insurance" clauses which cancel each other, we hold that they are mutually repugnant and are to be disregarded, with the loss shared by the insurers on a pro rata basis. Where the insurers have designated in their policies the same method of apportionment, the contracts will control. Absent concurring provisions for apportionment, coverage of the loss is to be shared on a pro rata basis according to the ratio each respective policy limit bears to the cumulative limit of all concurrent policies.

*Equity Mutual Ins. Co. v. Spring Valley Wholesale Nursery, Inc.*, 747 P.2d 947, 954 (Okla. 1987). Accordingly, under Oklahoma law, the coverage of the loss is to be shared between Philadelphia and Lexington.

Lexington argues that the rule in *Equity Mutual* does not apply in this case, because Philadelphia provided the more "specific" coverage for the Barnard building while Lexington provided only "blanket" coverage. According to Lexington, because the Lexington policy covered over one hundred School District buildings, whereas the Philadelphia policy covered only two School District buildings, Philadelphia's policy should be considered to be primary insurance on the Barnard building and Lexington's should be considered excess insurance. Lexington has not provided any Oklahoma authority in support of its argument (*see* Doc. 35 at

3

22-23). The same "blanket" versus "specific" coverage argument was previously made by Lexington in another case, and the court there rejected it. *See Lexington Ins. Co. v. Peerless Ins. Co.*, No. 09-CV-500-GKF, 2010 WL 2079706 at *2 (N.D. Okla. May 21, 2010). Lexington has not materially distinguished the prior case.

Lexington also argues that Philadelphia does not have "standing" to bring this suit because Philadelphia's insured is TSAS and Lexington's insured is the School District. However, Lexington has not provided any authority that applies to the facts of this case. The School District is not a stranger to Philadelphia or Lexington; it is the Named Insured under the Lexington policy, and it is the designated Loss Payee under the Philadelphia policy. Philadelphia requests that the Court declare the parties' respective obligations under the policies of insurance that covered the Barnard building, which was owned by the School District. None of the authorities cited by Lexington involved a situation such as this. Its authorities involved suits by parties or insurers of parties who were not insureds or loss payees on the policies at issue.[1]

Lexington cites a provision in a lease agreement between TSAS and the School District, which required that TSAS obtain insurance on the Barnard building. However, nothing in that agreement provides that the insurance obtained by TSAS was to be primary, just as no provision in the Philadelphia policy indicates that it is the primary insurance.

---

[1] Contrary to Lexington's arguments, Oklahoma law recognizes that loss payees have certain rights with respect to insurance policies in which they are named. For example, an insured and an insurer cannot settle a fire or theft insurance claim without the agreement of a named loss payee. *See Conner v. Northwestern Nat'l Cas. Co.*, 774 P.2d 1055, 1057 (Okla. 1989); *Perfect Investments, Inc. v. Underwriters at Lloyd's, London*, 782 P.2d 932, 933-34 (Okla. 1989); *see also Travel Stop, Inc. v. Alliance Gen. Ins. Co.*, 950 P.2d 834 (Okla. 1997).

4

Lexington's arguments are unavailing. Accordingly, Philadelphia's motion for summary judgment (Doc. 29) is hereby **granted**, and Lexington's motion (Doc. 32) is **denied**.[2] The Court has determined that the "other insurance" provisions in the policies are repugnant and shall be disregarded, such that Philadelphia and Lexington shall share coverage of the loss "on a pro rata basis according to the ratio each respective policy limit bears to the cumulative limit of all concurrent policies." *See Equity Mutual*, 747 P.2d at 954.

However, it is unclear at this time what Lexington's "policy limit" is for purposes of determining the pro rata share each party bears in this case. During oral arguments, Lexington asserted for the first time that, if the Court were to determine that the parties must share in the loss, the Court should apportion the loss in equal halves to Philadelphia and Lexington. The Court has thoroughly examined the Lexington policy. On the Declarations page, the "Limit of Insurance" is "$100,000,000., PER ANY ONE OCCURRENCE." (Doc. 35-2 at 12). There is also an "Occurrence Limit of Liability Endorsement," which provides in part that "[i]n the event of loss under the policy, *the liability of the Insurer(s) shall be limited to the least of ... [t]he actual adjusted amount of loss, less applicable deductible(s)*; ... [or] Any other Limit of Liability or Sublimit of Insurance or Amount of Insurance specifically stated in this policy to apply to any particular insured loss or coverage or location." (*Id.* at 29) (emphasis added). Because Lexington did not specifically request in its briefing that the loss be shared in equal halves, Philadelphia did not have an adequate opportunity to respond fully.

Based on the foregoing, the Court has concluded that each party should have an opportunity to present its arguments, *limited to* the specific issue of the policy limit that should be applied from the Lexington policy in making the pro rata calculation. Fourteen days from the

---

[2] Lexington's motion for summary judgment was premised upon the same arguments as presented in its response to Philadelphia's motion. (*See* Doc. 32, 35).

issuance of this Opinion and Order, the parties shall file simultaneous briefs, by noon Central Standard Time, regarding the pro rata calculation. The briefs shall be no more than five pages in length and shall reference all authorities and evidentiary support upon which a party wishes to rely. All citations to insurance policy provisions or other evidence in the summary judgment record shall reference the specific document number and page as it appears in the Court docket, as well as the specific section or paragraph of the policy. No response or reply briefs will be allowed without further order of the Court.

    IT IS SO ORDERED this 9th day of December, 2015.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE